Davis v. Hailey.

L. H. DAVIS *et al. v.* ROMANS HAILEY.

(*Nashville.* December Term, 1920.)

1. **STATUTES**. Caption held not to show that act contained more than one subject.

The caption of Acts 1919, chapter 182, declaring it was an act to regulate the licensing of real estate agents, etc., to define and punish offenses committed in violation of the act, to repeal that part of the act passed April 5, 1917, etc., and to amend portions of later acts and to amend other acts, those acts being for the purpose of raising revenue, is not shown by the last recital to contain more than one subject, in violation of Constitution article 2, section 17, the latter portion of the caption referring to the acts repealed or amended. (*Post, p. 249.*)

Acts cited and construed: Acts 1919, ch. 182.

Constitution cited and construed: Art. 2, sec. 17.

2. **STATUTES**. Act held not objectionable as relating to both po'ice and taxing powers.

Acts 1919, chapter 182, declaring that it shall be unlawful for any person to engage in the business of a real estate agent without first obtaining a license, requiring applicants to give bonds, providing for penalties for engaging in business without a license, etc., and finally in section 8 imposing on agents licensed a privilege tax, is not objectionable as containing more than one subject in violation of Constitution article 2, section 17, on the ground that the act involved a separate exercise of the police and taxing powers, for a license in its truer sense is issued under the police power, and the entire act shows that the police power is exercised with reference to licenses, and the taxing power is exerted to the same end. (*Post, pp. 249-252.*)

Davis v. Hailey.

Cases cited and distinguished: Bell v. Hart, 143 Tenn., ——; Mc-
Millan v. City of Knoxville, 139 Tenn., 319.

3. LICENSES.  Act requiring real estate brokers to pay license fee
   not tax measure because revenue is derived.

Though Acts 1919, chapter 182, imposes a fee of $25 as a condition
   to a license without which real estate men are forbidden to en-
   gage in business, it is not to be deemed in part a revenue measure,
   and therefore invalid on the theory that the exaction is out of
   proportion to the expense of issuing the license, for State officers
   must examine the bond tendered, etc., and the mere fact that reve-
   nue results incidentally does not show the act to be a taxing one.
   (Post, pp. 252, 253.)

4. CONSTITUTIONAL LAW.  Persons not affected cannot raise con-
   stitutional question.

Though Acts 1919, chapter 182, authorizes a fine of not less than $50
   nor more than $500 upon real estate agents doing business with-
   out procuring a license, and Constitution, article 6, section 14,
   prohibits the levying of a fine in excess of $50 except by a jury,
   a real estate agent, fined only $50, cannot attack the statute as a
   violation of the constitutional provision.  (Post, p. 253.)

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County.
—HON. JAS. B. NEWMAN, Chancellor.

F. M. BASS and W. E. NORVELL, JR., for appellant.

HORACE OSMENT and SMITH & BERRY, for appellees.

MR. JUSTICE GREEN delivered the opinion of the Court.

This suit attacks the constitutionality of chapter 182 of the Acts of 1919. The case was heard on demurrer before the chancellor, and he sustained the demurrer and upheld the act. The complainant has appealed to this court.

The act is assailed on several grounds, the first of which is that it contains two subjects in violation of section 17 of article 2 of the Constitution. The caption of the act is as follows:

"An act to regulate the licensing of real estate agents and real estate salesmen in the State of Tennessee, and the various counties thereof, and to define and punish offenses committed in violation of this act, and to repeal that part of an act passed April 5, 1917, and approved April 7, 1917, and being chapter 70, Senate Bill 1157, of the Acts of 1917, which was an act to amend chapter 101, House Bill 1195 of the Public Acts of 1915, and to amend certain provisions of the latter acts in so far as both acts, or either of them pertain to the licensing of real estate agents. The said acts being for the purpose of providing revenue for the State of Tennessee, and the counties and municipalities thereof, by providing for the imposition of privileges."

We may say at once that we think the last sentence in the caption was only intended to give the substance of the various acts proposed to be repealed or amended, and this last sentence of the caption, therefore, will not figure any further in the consideration of this suit.

The act provides that it shall be unlawful for any person to engage in the business of a real estate agent or salesman

Davis v. Hailey.

without first obtaining a license from the clerk of the county court. It is provided that applicants for license shall give a bond in the sum of $1,000, to be in a form approved by the attorney-general, for the protection of any person injured by the wrongful act of such agent or salesman. The person desiring a license is required to make an application for the same to the county court clerk on a form to be approved by the attorney-general, signed by at least ten freeholders, to the effect that they think the applicant honest, truthful, and of good moral character. Penalties are provided for engaging in the business without a license, and the first seven sections of the act contain other regulations not necessary to detail. As a condition to obtaining the license a real estate agent must pay to the county court clerk $25, along with his application, and a real estate salesman must pay $20.

Section 8 of the act imposes upon agents licensed thereunder a privilege tax, graduated according to the population of the city in which they are located.

Other sections of the act contains nothing material in this case.

It is said by counsel for the appellant that the first seven sections of this statute comprise purely a police regulation with reference to the licensing of real estate agents and salesmen; that section 8 of the act is an exercise of the taxing power of the State; and that this bringing together of the police power and the taxing power in one act makes the statute violate the two-subject clause of the Constitution.

We have recently gone over this ground in *Bell* v. *Hart,* 143 Tenn., 587, 223 S. W., 996, and, undertaking to state the result of our cases, there said:

"The two-subject clause of the Constitution was intended to prevent a combination in the same act of laws upon wholly different subjects; to avoid the union of incongruous matters in one statute; to secure unity of purpose in legislative enactments." *Bell* v. *Hart, supra.*

The subject of the act before us as expressed in its title is the regulation of the licensing of the real estate agents and salesmen.

In *McMillan* v. *City of Knoxville,* 139 Tenn., 319, 202 S. W., 65, it was said:

"A 'license,' in its truer sense, is issued under the police power, while a license may be issued on the payment of an 'occupation tax,' levied under this taxing power embodied in the Constitution, revenue being its primary object, though regulation may be in mind as an incident. The two charges and licenses are distinct things, but confusion of thought arises at times, due to the fact that a license may be issued in either case. In the one case, the power exercised is that to license, and in the other to tax and to license. 3 McQuillin, Mun. Corp., section 961."

It was said in that case to be "competent for the legislature to provide a regulatory license for, and also an occupation tax upon such agencies. The two are not inconsistent; neither impinges on the other." *McMillan* v. *City of Knoxville, supra.*

In requiring a license the state may proceed under its police power or its taxing power or under both.

In prescribing regulations for the licensing of a particular business, either or both powers may be involved. If the two powers are employed in respect to a single object, unity of purpose is preserved in the statute.

In this statute the police power is exerted with reference to licensing, and the taxing power is exerted to the same end.

So far as section 17, article 2, is concerned, if the various provisions of an act are directed toward a common purpose, and that purpose is expressed in the title, it would make no difference if the several provisions of the act involved all powers of the legislature. This section of the Constitution regulates the syntax of statutes. It imposes no restriction upon the powers exerted, nor upon the commingling of such powers, so long as the provisions of the statute are not incongruous and are germane to the subject expressed in the caption.

It is next urged that the fee of $25 exacted as a condition of the license is out of proportion to the expense incident to issuing the license, and that, therefore, the charge of such a fee cannot be justified as a police measure. We do not think that the fee charged is at all disproportionate or excessive. Officers of the State, whose time belongs to the State, and who are otherwise compensated by the State, are required by this statute to investigate and pass on the solvency of the bond of every applicant for license, to examine his recommendations, and to do other

things in connection with the issuance of the license. A fee of $25 or of $20 is not so excessive, if it indeed be excessive at all, as to render the requirement invalid as a police measure.    It makes no difference that revenue results incidentally.

One section of chapter 182 of the Acts of 1919 apparently authorizes the levy of a fine of not less than $50 nor more than $500 upon derelict agents.    Section 14, article 6, of the Constitution prohibits the levying of a fine in excess of $50, except by a jury.

No fine in excess of $50 was levied on the appellant in the case before us, and until some judge ignores the provision of the Constitution referred to and levies such fine, this question will not arise.    If it ever does, so much of the act as authorizes the assessment of a fine over $50 by the court alone will be elided.

We are of opinion that the decree of the chancellor sustaining this act as valid was correct, and it will be affirmed.